## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **LAURA J. MILLER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| v. | ) | **CIV-15-**617-L |
| | ) | |
| 1. **FARMERS INSURANCE** | ) | |
| **EXCHANGE, a/k/a FARMERS** | ) | |
| **GROUP, INC., a/k/a FARMERS** | ) | |
| **INSURANCE GROUP,** | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| **Defendant.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Laura J. Miller, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1.     Plaintiff, Laura J. Miller, is an adult female resident of Cleveland County, Oklahoma.

2.     Defendant is Farmers Insurance Exchange a/k/a Farmers Group, Inc. a/k/a Farmers Insurance Group, an entity doing business in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3.     This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on claims of: (a) disability discrimination, failure to accommodate and retaliation in violation of the Americans with Disabilities Act ("ADA") and the ADA Amendments Act ("ADAAA"); (b) retaliation for use/attempted use of leave under the

Family Medical Leave Act ("FMLA"); and (c) worker's compensation retaliation.

4.     This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331.   Plaintiff's corresponding state law claims arise out of the same core of operative facts and jurisdiction over such claims is vested in this Court under 28 U.S.C. § 1367.

5.     All of the actions complained of herein occurred in Oklahoma and Cleveland counties, Oklahoma.  Defendant is doing business in such counties and may be served in said counties.  Oklahoma and Cleveland counties are located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6.     Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about April 4, 2014.  The EEOC issued a Dismissal and Notice of Rights letter dated March 9, 2015 (received by Plaintiff by mail thereafter).  Plaintiff has timely filed this action within ninety (90) days of receipt of the same.

## STATEMENT OF FACTS

7.     Plaintiff began her employment with Defendant as a Casualty Adjuster in or around June 2005.   In or around May 2007, she was promoted to Office Claims Representative.  In or around September 2007, Plaintiff was transferred to a Property Claims Representative position.  And, in or around April 2011, she was promoted to Senior Property Adjuster.

8.    Plaintiff's job performance was at least satisfactory, if not excellent.  In fact, Plaintiff's annual performance evaluations consistently rated her as fully meeting or exceeding expectations.

9.    In or around 2006, Plaintiff was diagnosed with permanent brain damage resulting in frequent, severe headaches for which there was no treatment or cure.  Plaintiff was prescribed medication to control the headaches.

10.    In or around July 2013, Plaintiff noticed that she was experiencing memory loss and increased headaches.  Therefore, Plaintiff consulted with her doctor and was advised that she should undergo an MRI to determine whether her brain damage had progressed.

11.    Around this same time, Plaintiff told her Property Supervisor Stephanie Kunnanz that Plaintiff suffered headaches and memory loss resulting from permanent brain damage and was scheduled to have an MRI.  Plaintiff further stated that her doctor wanted to determine whether she had multiple sclerosis (MS).

12.    On or about August 13, 2013, Plaintiff told Kunnanz that she did not have MS, but that due to her brain damage and previous diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD"), Plaintiff had issues with her memory.  Plaintiff further explained the processes she used to assist with these issues, such as taking additional notes and asking more questions about work processes.  Kunnanz told Plaintiff to let her know if there was anything Plaintiff needed from her.

13.    On or about September 23, 2013, Plaintiff sustained an on-the-job injury when

3

she was rear-ended in her company car on the way to a property adjustment. Plaintiff sustained injuries to her back, wrist, knee and shoulder. As a result, Plaintiff was off work until September 26, 2013 when she was released to work on light duty.

14.     Due to these various medical conditions, including but not limited to permanent brain damage, ADHD and on-the-job injuries, Plaintiff is a qualified individual with a disability within the meaning of the ADA and ADAAA in that she is disabled, has a record of disability, and/or was perceived as disabled. Her disabilities substantially limit and/or limited her in one or more major life activities, including but not limited to walking, standing, thinking, and concentrating. Her disabilities impact one or more of her internal bodily processes, including but not limited to normal neurological and musculoskeletal function. However, at all times relevant hereto, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

15.     On or about December 10, 2013, Plaintiff was released to work with no restrictions.

16.     However, on or about January 8, 2014, Plaintiff's doctor placed a restriction on her, requiring that she not climb roofs. As a result, Plaintiff was not assigned claims which required her to climb on roofs.

17.     On or about February 24, 2014, Kunnanz presented Plaintiff with her 2013 performance evaluation. Plaintiff was rated as "fully meets expectations." Kunnanz notified Plaintiff that she would be receiving a pay increase and additional payment of STIP (Short

4

Term Incentive Compensation)[*sic*] based on her performance in 2013.

18.     Following the discussion of Plaintiff's performance review, Kunnanz noted that there were a few instances that Plaintiff designated "work comp time" when she attended doctor's appointments, but that Plaintiff had performed work during those time periods. Plaintiff explained that there were times that she briefly worked on items while she waited for the doctor.  Kunnanz advised Plaintiff not to worry about this issue because such time was paid whether it was "work comp" or time working and that Plaintiff's time records could easily be adjusted.

19.     On or about March 6, 2014, Plaintiff was written up and suspended by Kunnanz and Manager Chet Ames.  Plaintiff was told the reason for discipline was that on February 28, 2014, it was reported that Plaintiff had incorrectly recorded her time. Specifically, Plaintiff was cited for five (5) timekeeping errors over the previous five (5) months. The total amount of discrepancy was approximately twenty-nine (29) minutes where Plaintiff was actually working, but recorded in her time logs that she was not.

20.     As to the most recent discrepancy, Plaintiff explained that she logged the same start time as her partner that day, but did not log a brief phone call with a customer earlier that day because she did not recall having made the call to the customer to let the customer know they were on their way.  In other words, she was "working" via a customer call but did not log such time worked.

21.     Plaintiff was not given adequate time to determine whether the other time

discrepancies occurred and, if so, the reason for such discrepancies.

22.     Despite her explanation, Plaintiff was suspended with pay until March 12, 2014.  Plaintiff was told to turn in her company vehicle, computer and cell phone while an investigation was conducted.

23.     The same day, Plaintiff sent messages to Kunnanz explaining that she had difficulty with the process due to her brain issues and memory.

24.     On or about March 10, 2014, Plaintiff told Kunnanz that she met with an EAP counselor and had a follow-up appointment on March 20, 2014.  Plaintiff explained that she was working with EAP and her doctor to find out how she could work within Defendant's timekeeping system given her disabilities.  Plaintiff further stated that proper training on the timekeeping system and a way to track her time using log in and out time stamps would help.

25.     On or about March 20, 2014, following her meeting with EAP, Plaintiff was informed that she was terminated by Kunnanz and Ames.  Kunnanz stated that the reason for termination was that Plaintiff had violated Defendant's timekeeping policy after prior discipline.

26.     Later that day, Plaintiff called Human Resources representative Catherine Bullock.  Plaintiff explained that she had been working with her doctors and an EAP counselor to determine what accommodations could be provided to her in timekeeping and that she was not aware she had not been keeping time correctly prior to her suspension.  Plaintiff further stated that her disabilities affected her ability to operate Defendant's

timekeeping system.  Bullock told Plaintiff that her termination was not negotiable.

27.     Defendant's proffered reason was false.  The prior discipline to which Defendant referred were several years old.  The most recent discipline occurred on August 24, 2012.  Upon information and belief, a department-wide audit of time records was conducted in or around August 2012.  Plaintiff and others were called to a meeting where working overtime was discussed.  While several adjusters were issued written discipline, Plaintiff was the only employee suspended for five (5) days without pay.

28.     Further, Plaintiff's performance evaluations, including the document issued by Kunnanz on or about February 24, 2014, did not reference timecard violations of any kind.  Her positive job performance is further evidenced by the pay increase and STIP payment she was notified she would receive just days before she was written up and suspended for alleged timecard violations.

29.     Despite her stellar performance and longevity with Defendant, Defendant alleges that Plaintiff was fired for not logging approximately twenty-nine (29) minutes of time she actually worked over a five (5) month period.  Such reason is merely pretext for unlawful discrimination and retaliation due to Plaintiff's medical conditions, use of FMLA-qualifying leave, and her on-the-job injury.

30.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I - ADA/ADAAA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

31.     The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disabilities, and in retaliation for her attempts to identify and request reasonable accommodations, in violation of the ADA and ADAAA.

32.     More specifically, Plaintiff was a qualified individual with a disability in that she suffers from physical impairments as described above which substantially limits her ability to perform one or more major life activities as set forth above.  Further, Plaintiff's disability impacts one or more of her internal bodily processes as shown herein.

33.     Despite said impairments, Plaintiff could perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

34.     Plaintiff placed Defendant on notice that she was working with her doctor and EAP to determine how best Plaintiff could keep track of her time in Defendant's timekeeping system.  However, Defendant terminated Plaintiff before she could submit her requests for accommodation.

35.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

36.     Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT II - FMLA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

37.    The matters alleged above constitute interference with and retaliation for Plaintiff's use and/or attempted use of medical leave in violation of the Family Medical Leave Act.

38.    Plaintiff was entitled to medical leave because she required time off to care for herself due to serious health conditions (as set forth above) and worked for Defendant (i.e., an entity with more than 50 employees within a 75 mile radius of Plaintiff's worksite), for more than one (1) year and for more than 1,250 hours within the one year prior to her need for leave.

39.    Defendant interfered with and retaliated against Plaintiff for her use of time off.

40.    As set forth herein, Defendant's actions were in willful violation of the law. Defendants were aware of FMLA and the requirements contained therein, but willfully violated Plaintiff's FMLA rights.

41.    As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries and is entitled to recovery of all damages, including, but not limited to, lost wages (past and future), liquidated damages (based on the willfulness of Defendant's violation of the FMLA), attorney fees and costs.

### COUNT III -  WORKERS' COMPENSATION RETALIATION

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

42.     Defendant's actions, as described above, constitute retaliation in violation of the Oklahoma Workers' Compensation Act.

43.     Plaintiff sustained a job-related injury for which she could assert a claim for benefits under the Administrative Workers' Compensation Act.

44.     Defendant had knowledge of Plaintiff's work-related injury.   Thereafter, Defendant terminated Plaintiff's employment.

45.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

46.     Defendant's actions were willful, wanton and/or conducted in a reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 3rd DAY OF JUNE, 2015.**

s/Jana B. Leonard
JANA B. LEONARD, OBA# 17844
LAUREN W. JOHNSTON, OBA #22341
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800      (telephone)
(405) 239-3801       (facsimile)
leonardjb@leonardlaw.net
johnstonlw@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED